1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   SAN DIEGO COMPREHENSIVE PAIN          Case No. 21-cv-01739-BAS-WVG
     MANAGEMENT CENTER, INC., *et al.*,
12                                          **ORDER DISMISSING ACTION**
                                Plaintiffs,  **WITHOUT PREJUDICE FOR LACK**
13                                          **OF SUBJECT MATTER**
          v.                                **JURISDICTION**
14
     XAVIER BECERRA, *et al.*,
15
                                Defendants.
16
17
18

19        Plaintiffs are three group medical practices and a surgery center that treat patients
20   with chronic pain issues.  Plaintiffs have received Medicare payments from the United
21   States Department of Health & Human Services ("HHS") until September 2021, when
22   HHS suspended the Medicare payments.  Plaintiffs moved for preliminary injunction
23   requiring Defendants to remove the suspension; pay any outstanding, new, and pending
24   claims; and provide notice of the reasons for the suspension.  (ECF No. 7.)
25        Because Plaintiffs' claims arise under Medicare, their sole avenue to seek judicial
26   review is through 42 U.S.C. § 405(g), which requires Plaintiffs to exhaust administrative
27   remedies or show that the exhaustion requirement should be judicially waived to establish
28

                                        - 1 -

statutory jurisdiction.  Plaintiffs did neither.  Therefore, the Court dismisses this action for lack of subject matter jurisdiction.

## I.    BACKGROUND

Plaintiffs San Diego Comprehensive Pain Management Center, El Centro Comprehensive Pain Management Center, Las Vegas Comprehensive Pain Management Center, and Pacific Surgical Institute of Pain Management, Inc., are group medical practices and a surgery center owned by David J. Smith, M.D.  (Compl. ¶ 1; Pls.' Mem., ECF No. 7-1 at 9.)  Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services ("HHS").  An agency within HHS, the Centers for Medicare and Medicaid Services ("CMS"), oversees the Medicare program and contracts with a Medicare Unified Program Integrity Contractor ("UPIC"), who reviews, investigates, and audits payments made on behalf of the federal government.  Defendant Qlarant Integrity Solutions, LLC is a UPIC.   HHS also contracts with "fiscal intermediaries," also known as "Medicare Administrative Contractors" ("MAC"), to administer, process, and pay valid claims to qualified providers.

Effective September 9, 2021, Plaintiffs' Medicare payments have been suspended. (Compl. ¶ 4.)

### A.    Regulatory Background

Because Plaintiffs challenge the procedure by which their Medicare payments were suspended, the Court provides a brief summary of the regulatory framework governing suspensions of Medicare payments.

CMS may suspend payments to a Medicare provider "in whole or in part," when CMS determines that "a credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2).  In some cases, CMS may suspend payments without prior notice to the service provider, but CMS must provide the provider with an opportunity to submit a rebuttal statement in writing as to why the suspension should be removed.  *Id.*

- 2 -

21cv1739

§§ 405.372(a)(3), (b)(2).  Within fifteen days of the receipt of the rebuttal, CMS determines whether the suspension should stay in effect or be removed.  *Id.* § 405.375(a).  That determination is not "an initial determination and is not appealable." *Id.* § 405.375(c).

If the agency determines that a suspension based on an allegation of fraud should stay in effect, CMS reviews additional evidence as to whether an overpayment exists. *Id.* § 405.372(c)(2)(i).  "The rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation." *Id.* § 405.372(c)(2)(ii).  "[A]ll suspensions of payment in accordance with § 405.371(a)(2) will be temporary and will not continue after the resolution of an investigation, unless a suspension is warranted because of reliable evidence of an overpayment or that the payments to be made may not be correct[.]" *Id.* § 405.372.

If the agency determines that there was an overpayment and decides to recoup the payments under 42 C.F.R. § 405.371(a)(3), the agency provides a written notice, and the provider is given an opportunity for rebuttal in accordance with § 405.378.  Such written determination of overpayment and a written demand for payment constitutes a "final determination." *Id.* 405.378(c)(1).  If the agency determines that the payment suspension should be removed, the money withheld is first applied to reduce any determined overpayment and then to reduce the provider's any other obligation to the CMS or the HHS. *Id.* § 405.372(e).  Any excess is released to the provider.

A provider appealing an initial determination of overpayment must go through the prescribed appeal process.  First, a provider may request a redetermination by a MAC.  42 C.F.R. §§ 405.940, *et seq*.  Second, the provider can appeal the redetermination to a qualified independent contractor ("QIC") for "reconsideration." *Id.* §§ 405.960, *et seq*.  Third, the provider may appeal the reconsideration and request a hearing before an administrative law judge ("ALJ") at the Office of Medicare Hearings and Appeals ("OMHA"). *Id.* §§ 405.1000, *et seq*.  Fourth, the provider can appeal the ALJ's decision to the Medicare Appeals Council. *Id.* §§ 405.1100, *et seq*.  The Appeals Council's ruling

21cv1739

is the final decision of the Secretary. *Id.* § 405.1130.  The provider may then seek judicial review by a federal district court. 42 U.S.C. § 405(g).

The provider may expedite the process to obtain the final decision from the Secretary.  An ALJ is required to "conduct and conclude a hearing . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed."  42 U.S.C. § 1395ff(d)(1)(A).  "If an ALJ does not render a decision within the 90-day period, a Medicare provider may move directly to step four and escalate its claim to the Departmental Appeals Board ("DAB"), which provides de novo review." *H. Babaali M.D. Med. Inc. v. Azar*, 798 F. App'x 56, 57 (9th Cir. 2019) (citing 42 U.S.C. § 1395ff(d)(2)(B), (3)(A)).  Subsequently, if the DAB does not process the appeal within 180 days, the provider may seek review in federal district court.  *Id.* (citing 42 U.S.C. § 1395ff(d)(2)(A), (3)(B); 58 42 C.F.R. §§ 405.1100, 405.1132(a)).

If, as a result of the appeal, the determination against the provider is reversed, "the Secretary [must] provide for repayment of the amount recouped plus interest[.]"  *See* 42 U.S.C. § 1395ddd(f)(2)(b).

## B.    Factual Background

On or around September 16, 2021, after Plaintiffs discovered that they were not receiving Medicare reimbursement for all of their services, Plaintiffs wrote a letter to Defendants in protest.  (Compl. ¶ 20.)  Thirteen days later, Defendant Qlarant Integrity Solutions confirmed the receipt of Plaintiffs' objection and issued a letter stating that "a response would be forthcoming."  (*Id.* ¶ 21.)

On or around October 22, 2021, CMS notified Plaintiffs of its determination that the Medicare payments will be suspended effective September 9, 2021, under 42 C.F.R. § 405.371(a)(2).  CMS explained that the suspension was based on "a credible allegation of fraud [that] exists against a provider or supplier."  (Exs. A, B, C to Pls.' Reply, ECF No. 27-1.)  Specifically, CMS stated that "Plaintiffs submitted claims to Medicare for services

that are medically unnecessary." (*Id.*)  CMS explained that prior notice of the suspension was not provided "because giving prior notice would place additional Medicare funds at risk and hinder [the agency's] ability to recover any determined overpayment."  (Exs. A, B, C to Pls.' Reply, ECF No. 27-1 (citing 42 C.F.R. § 405.372(a)(3) and (4)).)  CMS informed Plaintiffs of the right to submit a rebuttal statement to Qlarant Integrity Solutions, LLC, in writing, pursuant to 42 C.F.R. § 405.372(b)(2).

### C.    Procedural Background

On October 7, 2021, Plaintiffs filed the present action against Defendants.  (Compl., ECF No. 1.)  Plaintiffs filed an *ex parte* application for temporary restraining order or for preliminary injunction, which the Court construed as a motion for preliminary injunction and set a briefing schedule.  (Pls.' Mot., ECF No. 7; Order, ECF No. 13.)  In their respective opposition briefs, the Secretary of HHS and Qlarant Defendants ask the Court to dismiss the action for lack of subject matter jurisdiction.  (Qlarant Defendants' Opp'n, ECF No. 21; HHS' Opp'n, ECF No. 22).  Qlarant Defendants separately argue that they should be dismissed because they are not parties of interest in this action.  Plaintiffs filed a reply brief. (ECF No. 27.)

The Court held an oral argument on November 30, 2021, and denied Plaintiffs' motion for preliminary injunction.  The Court deferred making a ruling on whether the action should be dismissed for lack of subject matter jurisdiction.

## II.    SUBJECT MATTER JURISDICTION

### A.    Legal Standards

#### 1.    Sua Sponte Dismissal for Lack of Subject Matter Jurisdiction

"A federal district court is a court of limited jurisdiction, and the burden of establishing jurisdiction is on the party claiming jurisdiction."  *Cook v. City of Pomona*, 70 F.3d 1277 (9th Cir. 1995).  A court may *sua sponte* dismiss an action for lack of jurisdiction.  *See Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th

Cir. 2003).  If a court lacks subject matter jurisdiction, any pending motion for preliminary injunction should be denied as moot, and the case must be dismissed.  *See R.J. Reynolds Tobacco Co. v. Becerra*, No. 20-CV-1990-CAB-WVG, 2021 WL 3472697 (S.D. Cal. Aug. 6, 2021).

### 2.   Statutory Jurisdiction for Claims Arising Under the Medicare Act

"Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 *et seq.*, commonly known as the Medicare Act, establishes a federally subsidized health insurance program to be administered by the Secretary."  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).  "42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act."  *Silverado Hospice, Inc. v. Hardan*, No. SACV 17-01394-JLS (JDEx), 2018 WL 6185966, at *3 (C.D. Cal. Feb. 8, 2018).

Section 405(g) "permits an individual to file suit in federal court 'after any final decision of the Secretary made after a hearing.'"  *Winter v. California Med. Rev., Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1989).  This "final decision" condition consists of two elements: a non-waivable requirement that "a claim for benefits shall have been presented to the Secretary," and a waivable requirement "that the administrative remedies prescribed by the Secretary be exhausted."  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *see also Bowen v. City of New York*, 476 U.S. 467, 482–83 (1986)).

### B.   Analysis

#### 1.   Exhaustion

It is not disputed that Plaintiffs' claims challenging the suspension of Medicare payments arise under the Medicare Act and federal jurisdiction must be based on 42 U.S.C. § 405(g).  Assuming that Plaintiffs have presented their claims to the agency, Plaintiffs

must show that they have exhausted the administrative remedies or that such exhaustion should be judicially waived.

Plaintiffs concede that they have not exhausted the administrative remedies available to them.  Plaintiffs are so early in the administrative review process that they have not shown that they have obtained any initial determination by the HHS, much less a final decision.  Accordingly, to avoid a dismissal for lack of subject matter jurisdiction, Plaintiffs must establish that the exhaustion requirement should be judicially waived.

### 2.    Judicial Waiver of Exhaustion

To have the administrative exhaustion requirement judicially waived, Plaintiffs must show that their claim is (1) "collateral to a substantive claim of entitlement (collaterality)"; (2) "colorable in its showing that denial of relief will cause irreparable harm (irreparability)"; and (3) "one whose resolution would not serve the purposes of exhaustion (futility)." *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003). Because Plaintiffs have not shown that they satisfy any of the three elements of judicial waiver, the Court declines to waive the exhaustion requirement.

### a.    Collaterality

Plaintiffs argue that their due process claim is collateral to their claim of entitlement. "A claim is collateral when it is 'not bound up with the merits so closely that the court's decision would constitute interference with agency process.'" *Hollywood Home Health Servs., Inc. v. Qlarant Quality Sols., Inc.*, No. CV 19-6817-DMG (ASX), 2020 WL 3964792, at *4 (C.D. Cal. Feb. 27, 2020) (quoting *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993)).

As an initial matter, because the injunction Plaintiffs seek is an order for Defendants to stop withholding Medicare payments, it "is essentially another way of stating that Plaintiff wants the Court to order Defendants to pay out Medicare benefits." *St. Ann Hospice, Inc. v. Sec'y of the U.S. Dep't of Health & Hum. Servs.*, No. CV 10-2669 PA

(RCX), 2010 WL 11597946, at *2 (C.D. Cal. July 26, 2010).   In addition, while a procedural due process claim may be collateral to a substantive claim of entitlement in some cases, courts have held that challenges to agency errors in the early stages of making an initial determination that can be appealed through the administrative exhaustion process are "inextricably intertwined with" the substantive claim of entitlement and thus do not satisfy the collaterality requirement.  *See Kildare v. Saenz*, 325 F.3d 1078, 1083 (9th Cir. 2003); *see also Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996) (holding that the collaterality requirement was not satisfied as to the provider's due process claim challenging the suspension without a hearing, where the agency has merely notified the provider that it is suspending the Medicare payments based on allegation of fraud).

Here, Plaintiffs' claims that Defendants' actions are extralegal are based on the allegations that the CMS suspended the Medicare payments without "evidence of any conceivable fraud or abuse on the part of the Plaintiff Medical Providers" and in doing so committed procedural irregularities in violation of its own regulations, such as not responding to Plaintiffs' letter in a timely manner.  (Compl. ¶¶ 6, 12, 14, 21.)  Plaintiffs also allege that Defendants are indefinitely suspending the Medicare payments without notice and an opportunity to be heard.  (*Id.* ¶ 22.)  Determining the merits of Plaintiffs' claims necessarily requires the Court to examine whether the suspension is without merit and in violation of the relevant statute and regulations.  Therefore, the Court finds that Plaintiffs have not shown that their claims are not bound up with the merits of their substantive claim of entitlement.

Thus, the collaterality element of judicial waiver is not satisfied.

### b.    Irreparability

Plaintiffs argue that they will suffer irreparable injury without the rescission of suspension because their businesses will not survive, and they will not be able to provide "life-saving" treatment to their patients.  To satisfy the irreparability element, Plaintiffs must show that they have a colorable claim of irreparable harm.  "A colorable claim of

- 8 -

irreparable harm is one that is not 'wholly insubstantial, immaterial, or frivolous.'" *Kildare*, 325 F.3d at 1083.

As an initial matter, the Medicare Act provides for payment of amount owed plus interest, if it is determined that the suspension must be reversed.   42 U.S.C. § 1395ddd(f)(2)(b).  Ordinarily, where such monetary relief is available, the alleged injury is not deemed irreparable.  *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *see also Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 F. App'x 406, 407 (9th Cir. 2017) (finding that judicial waiver of exhaustion was not appropriate where the appellant "lack[ed] an irreparable injury because a future award of damages plus interest will make it whole").

Assuming that irreparable harm may be found in some cases where monetary injuries would threaten a business's existence, Plaintiffs have not made a sufficient showing of a threat to the existence of their businesses.  Plaintiffs rely on a declaration by Plaintiffs' business owner, who states that without the termination of suspended payments, "Plaintiffs will be forced to close their operations because of insolvency or bankruptcy." (Smith Decl. ¶ 26.a, ECF No. 7-2.)  The Ninth Circuit has already held that similar, conclusory affidavits by business owners do not constitute sufficient evidence to show that the existence of the business would be threatened without relief.  *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (holding that statements by the plaintiff entity's president that it sustained monetary losses, standing alone, are not sufficient evidence that the plaintiff is threatened with extinction).

Similarly, Plaintiffs have not shown that their patients would suffer irreparable harm from Plaintiffs' inability to provide services because of the suspended payments.  Plaintiffs allege, in a conclusory manner, that they will not be able to provide their patients with "life-saving medical care." (Pls.' Mem. at 11, ECF No. 7-1.)  According to Plaintiffs, they are "the largest providers of intrathecal pain pump treatment," and their pump patients "will have nowhere to go to receive treatment because of the decimation of pain management physicians by regulatory and law enforcement action in Southern California." (*Id.*)  To the

21cv1739

extent that in some instances a provider's discontinuance of a particular medical service can satisfy the irreparability requirement, Plaintiffs have not made a sufficient showing that their patients will be irreparably harmed.  Even assuming that patients' access to intrathecal pain pump treatment will be curtailed because of Plaintiffs' inability to provide that particular treatment, Plaintiffs offer no proof that the patients lack access to any other alternative, medically necessary treatment.

Therefore, the Court finds that Plaintiffs have not established a colorable claim of irreparable harm.

### c.    Futility

Plaintiffs argue that exhausting administrative remedies would be futile because the Medicare Act and its implementing regulations do not provide a process to appeal the allegedly "fraudulent" temporary suspension of payments.  "Futility is established if exhausting administrative remedies 'would not serve the policies underlying exhaustion.'" *Sensory Neurostimulation, Inc. v. Azar*, 977 F.3d 969, 981 (9th Cir. 2020) (quoting *Cassim*, 824 F.2d at 795)).  The policies underlying exhaustion are "to compile a detailed factual record and apply agency expertise in administering its own regulations"; and "conserve[] judicial resources" by allowing the agency to "correct its own errors through administrative review." *Id.*

As stated above, the suspension at issue is temporary and is generally capped at eighteen months.  42 C.F.R. § 405.371(b)(3).  Thus, the claims "can be considered once final agency decisions . . . are issued."  *See Silverado Hospice*, 2018 WL 6185966, at *4. A delayed review does not equal futility of review.  As the Supreme Court has held in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), Section 405's requirement to channel "virtually all legal attacks through the agency . . . assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case." *Id.* at 13.  Although "this assurance comes at a

price, namely, occasional individual, delay-related hardship," the Congress decided that this price is justified "[i]n the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts[.]" *Id.*

Here, the administrative review would include a review on the merits of the agency's reasoning behind the suspension or a later determination of overpayment. *See St. Ann Hospice*, 2010 WL 11597946, at *2. "[T]here is much to be gained from establishing a factual record at the administrative level" because whether Defendants properly determined that a basis for suspension exists or whether there was an overpayment was made "depends on facts specific to each individual patient for which Plaintiff made a claim." *See id.* "Administrative process would help develop facts to assist a court in determining whether the services rendered were reasonable and necessary for each individual patient and whether the services were properly documented in each instance." *Id.*

To the extent that Plaintiffs argue that the suspension may extend beyond eighteen months if the case is referred to the OIG or the DOJ pursuant to 42 C.F.R. § 405.371(b)(3), that concern is purely hypothetical at this juncture. Further, Plaintiffs provide no authority to support its position that a mere possibility of an extension beyond eighteen months itself would make it futile to exhaust administrative remedies. To the contrary, decisions by courts in this circuits counsel against a finding of futility of exhaustion in the context of challenges made against temporary suspensions of Medicare payments. *See, e.g.*, *Silverado Hospice*, 2018 WL 6185966, at *4 (finding that a provider failed to show that it would be futile to exhaust administrative remedies regarding its claim that the temporary suspension of Medicare payments was not justified by a credible allegation of fraud). Plaintiffs have not shown that the futility requirement for obtaining judicial waiver of exhaustion is satisfied.

### III.   CONCLUSION

Plaintiffs have not exhausted administrative remedies nor shown that the exhaustion requirement should be judicially waived, as required under 42 U.S.C. § 405(g).  The Court concludes that it lacks subject matter jurisdiction over this action.  Accordingly, the Court **DISMISSES** this action **WITHOUT PREJUDICE** for lack of jurisdiction.[1]

   **IT IS SO ORDERED.**

**DATED: December 1, 2021**

Hon. Cynthia Bashant
United States District Judge

---

[1] Because the Court dismisses this action for lack of jurisdiction, it need not determine whether the Qlarant Defendants are adequate parties of interest in this action.

- 12 -

21cv1739